UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MARY CHISHOLM              :
                           :
v.                         :   C.A. No. 19-00206-WES
                           :
CITY OF WARWICK            :

REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B)) is Defendant's Motion for Summary Judgment. (ECF No. 22). Plaintiff objects. (ECF No. 26). A hearing was held on December 21, 2021. For the following reasons, I recommend that Defendant's Motion be DENIED.

**Discussion**

A.   **Standard of Review**

Under Fed. R. Civ. P. 56, summary judgment is appropriate if the pleadings, the discovery, disclosure materials and any affidavits show that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009); Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). A fact is material only if it possesses the capacity to sway the outcome of the litigation; a dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010). The evidence must be in a form that permits the court to conclude that it will be admissible at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986). "[E]vidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Vasconcellos v. Pier 1 Imps. (U.S.) Inc., C.A. No. 06-

484T, 2008 WL 4601036, at *3 (D.R.I. Apr. 28, 2008).  The "fact that there are conceivable inferences that could be drawn in Plaintiff's favor does not mean that those inferences are 'reasonable' enough to justify sending the case to the jury."  Tavares v. Enter. Rent-A-Car Co. of R.I., No. CV 13-521 S, 2016 WL 6988812, at *2-3 (D.R.I. Nov. 29, 2016).

In ruling on a motion for summary judgment, the court must examine the record evidence in the light most favorable to the nonmoving party; the court must not weigh the evidence or reach factual inferences contrary to the opposing party's competent evidence.  Tolan v. Cotton, 572 U.S. 650, 660 (2014).  In employment cases, summary judgment is appropriate when the party opposing the motion "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Feliciano de la Cruz v. El Conquistador Resort & Cty Club, 218 F.3d 1, 5 (1st Cir. 2000); Bonilla v. Electrolizing, Inc., 607 F. Supp. 2d 307, 314 (D.R.I. 2009).  The motion must be denied if there is sufficient evidence from which a reasonable jury could infer that the adverse employment action was based on discriminatory animus or that the employer's articulated reason is a sham and the true reason is discriminatory.  Trainor v. HEI Hosp., LLC, 699 F.3d 19, 28 (1st Cir. 2012); Smith v. F.W. Morse & Co., 76 F.3d 413, 421 (1st Cir. 1996).

**B.    Facts**

Plaintiff is a veteran elementary school teacher who has been employed by the City of Warwick since 1990.  (ECF No. 1 p. 2).  She originally sued both the City of Warwick and the Warwick Public Schools in this workplace discrimination/retaliation suit.  However, in response to Defendant's argument that the Warwick Public Schools is not a proper party to this suit, Plaintiff has voluntarily dismissed all claims as to that entity, so the City of Warwick, her employer, is the only remaining Defendant.  (ECF No. 26-1 at p. 1).  Her claims against the City relate to events that occurred during the 2018-2019 school year.  During that school year, Plaintiff and a special education teacher were co-teaching a first-grade,

collaborative classroom. A collaborative class is one co-taught by a "regular education content area teacher and a special education teacher." (ECF No. 23 ¶ 6).

In February 2019, Plaintiff raised concerns with three administrators about her co-teacher's frequent absences and that most of the substitute teachers assigned to her collaborative classroom to fill in were not certified in special education as required. Id. ¶ 8.[1] In response, two of those administrators conducted a classroom observation on March 6, 2019. Id. ¶ 9. That same day, the school psychologist observed an interaction between Plaintiff and a student that "caused her concern." Id. ¶ 10. The school psychologist reported the observation to one of the administrators who had conducted the classroom observation, and she was instructed by the administrator to report the interaction to DCYF. Plaintiff was immediately placed on paid administrative leave. Id. ¶¶ 11-13. When her administrative leave ended in May 2019, she was involuntarily transferred to a non-collaborative first grade class. Id. ¶ 15; ECF No. 22-6 at p. 2. Plaintiff did not return to work in the new assignment and instead commenced a sick leave in May 2019 which extended through the end of that school year. (ECF No. 27 at p. 1). When she returned for the 2019-2020 school year, Plaintiff was permitted to either return to a collaborative classroom, or to participate in the contractual job selection process. (ECF No. 22-6 at p. 2). She ultimately returned to a non-collaborative classroom for the next school year.

### C. Analysis and Recommendation

Plaintiff alleges that she suffered retaliation for raising the above-described concerns about her collaborative classroom to school administrators in February 2019. She claims a violation of both the Rhode Island Whistleblower's Protection Act ("RIWPA") (R.I. Gen. Laws § 28-50-1, et seq.) and the Federal Rehabilitation Act of 1973 (29 U.S.C. § 794).

The RIWPA states, in pertinent part:

---

[1] Plaintiff alleges she had raised similar concerns about her co-teacher's absences during the 2017-2018 school year. (ECF No. 28 at ¶ 24).

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment…
>
> * * *
>
> [b]ecause the employee reports verbally or in writing to the employer or to the employee's supervisor a violation, which the employee knows or reasonably believes has occurred or is about to occur, of a law or regulation or rule promulgated under the laws of this state, a political subdivision of this state, or the United States, unless the employee knows or has reason to know that the report is false. Provided, that if the report is verbally made, the employee must establish by clear and convincing evidence that the report was made.

R.I.G.L. § 28-50-3(4).

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…." 29 U.S.C. § 794(a). Furthermore, the Rehabilitation Act incorporates the anti-retaliation provision of Title VI of the Civil Rights Act of 1964: "The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964...shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance...." 29 U.S.C. § 794a(2). Thus, the Rehabilitation Act's protections apply to "'any individual' who has been intimidated, threatened, coerced, or discriminated against 'for the purpose of interfering with [protected rights]' under Title VI of the Civil Rights Act or the Rehabilitation Act." The First Circuit has consistently held that the Rehabilitation Act prohibits retaliation against any person, whether disabled or not, for opposing disability-based discrimination made unlawful by the statute. D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 40-41 (1st Cir. 2012); Weber v. Cranston Sch. Comm., 212 F.3d 41, 48 (1st Cir. 2000).

Establishing a prima facie case is effectively the same under both the RIWPA and the Rehabilitation Act. In order to set forth a prima facie whistleblower/retaliation claim under the RIWPA

and the Rehabilitation Act, a plaintiff-employee must establish (1) that he/she engaged in protected conduct; (2) that he/she experienced an adverse employment action; and (3) that a causal connection existed between the protected conduct and the adverse employment action.  See Palmquist v. Shinseki, 689 F.3d 66, 70 (1st Cir. 2012); Marques v. Fitzgerald, 99 F.3d 1, 4 (1st Cir. 1996); see Chagnon v. Lifespan Corp., 2017 WL 3278952 *6 (D.R.I. June 19, 2017).

Defendant's Motion for Summary Judgment narrowly challenges Plaintiff's ability to satisfy the second element of her prima facie case – whether she suffered any adverse employment action.  The First Circuit has explained that "[t]o be adverse, an action must materially change the conditions of plaintiff's employ."  Gu, et al. v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002) (citation omitted).  Typically, such actions "involve[ ] discrete changes..., such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."  Cham v. Station Operators, Inc., 685 F.3d 87, 94 (1st Cir. 2012) (quoting Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010)).  Whether an employment action is "adverse," and therefore actionable, is gauged by an objective standard.  See Blackie v. Maine, 75 F.3d 716, 725-726 (1st Cir. 1996).

As noted, Defendant's Motion is narrow in scope.  It asserts that Plaintiff was not subject to any adverse employment action that could, as a matter of law, form the basis of the unlawful discrimination/retaliation claims she asserts in this action.  Specifically, it argues that "[t]he actions of the defendants placing the plaintiff on paid administrative leave and transferring her to a different first grade classroom when that leave concluded, were not materially adverse to [Plaintiff]."  (ECF No. 22-1 at p. 8).  Plaintiff disputes that assertion and argues that she suffered multiple adverse employment actions as a result of her complaints which each are sufficient to establish prima facie whistleblower and retaliation claims against Defendant.  For the following reasons and viewing the evidence in the light

most favorable to Plaintiff as required by Rule 56, I agree in part with Plaintiff and thus recommend denial of Defendant's Motion.

Defendant relies heavily on the Rhode Island Supreme Court's decision in Russo v. State of Rhode Island, Dep't of MHRH, 87 A.3d 399 (R.I. 2014).  In Russo, the Supreme Court reversed a bench trial decision that the defendant violated the RIWPA - holding, as a matter of law, that placing an employee on paid administrative leave with the requirement that he undergo a fitness-for-duty, independent medical examination before returning to work was not an adverse employment action.  The Russo Court reasoned that since the plaintiff was not subject to an adverse employment action, his employer did not "discharge, threaten, or otherwise discriminate against" him in violation of the RIWPA. Id. at 411.  The Court found it "noteworthy" that the plaintiff did not suffer any diminution in compensation during the leave and returned to work in the same position he previously held with "no evidence that he suffered any change in his salary, benefits, or job responsibilities." Id. at 409.  It also described a paid administrative leave as a "reasonable means" to neutralize a problematic workplace situation while only "minimally affecting the employee." Id. at 407-408.  Plaintiff persuasively argues that Russo is not controlling for two reasons.  First, Russo was decided after a full trial and not applying the summary judgment standard of review requiring that the evidence be construed in Plaintiff's favor.  Second, and more to the point, Plaintiff here presents evidence from which a reasonable juror could conclude that she suffered more than just a short-term paid leave to "neutralize" a workplace situation.  While it is true that Plaintiff here was initially placed on a paid administrative leave as was the plaintiff in Russo, the similarities effectively end there.

Plaintiff points to four separate adverse employment actions that she claims distinguish her case from Russo.  According to Plaintiff, each of the four actions were the result of unlawful retaliation by her supervisors.  She claims that after complaining about unlawful workplace conduct to her supervisors, a classroom observation was conducted, and the same day a complaint was filed with DCYF alleging

that Plaintiff improperly escorted a student by holding his wrist and pulling him. (ECF No. 28 at ¶ 56, 57). Plaintiff was placed on paid administrative leave as a result and subsequently involuntarily transferred to a different classroom within the same school. (ECF Nos. 22-5 and 22-6). Plaintiff disputes that she improperly escorted the student.

The first adverse action alleged by Plaintiff is her involuntary transfer to a new first grade classroom following her leave. Plaintiff contends that her transfer to a new classroom is factually distinct from Russo because, unlike the plaintiff in that case, Plaintiff was involuntarily returned to a position that entailed both additional job responsibilities and negative stigma. As the District of Puerto Rico has noted, "[a]n adverse employment action need not rise to the level of a discharge to be actionable and encompasses demotions, disadvantageous transfers or assignments, refusals to promote…." Acevedo Martinez v. Coatings Inc. & Co., 251 F. Supp. 2d 1058, 1068 (D.P.R. 2003). Plaintiff persuasively argues that her involuntary transfer/reassignment was disadvantageous.

Defendant disagrees. First, Defendant claims that Plaintiff was never actually subjected to the involuntary transfer because she did not return to school during the 2018-2019 school year and went on a medical leave. Defendant claims that because Plaintiff was on paid leave, the involuntary transfer never resulted in any negative economic impact to Plaintiff. Second, Defendant argues that because the transfer/placement was temporary, it cannot be an adverse action as a matter of law. I find that neither of these arguments is sufficient to overcome the evidence proffered by Plaintiff concerning the circumstances and impact of the involuntary transfer/reassignment, as discussed below.

Plaintiff contends that the transfer was adverse because the classroom she was transferred to was next door to her former classroom, and she would have seen and interacted with her former students on a daily basis. She notes that these students (and their parents) would have necessarily been curious and posed questions to her about why she left their class and joined a new class. Further, she points out that she would have been required to adjust to new students and develop new teaching and classroom

-7-

management routines with less than two months left in the school year. (ECF No. 26-1 at p. 5). These are both valid points that could be credited by a reasonable juror, and thus differentiate her transfer from the one at issue in Russo because of the nature of her work with young students, the stigma amongst peers, students and parents attached to an involuntary transfer, and the new workload that would have been created by entering a new classroom so late in the school year. In the context of a summary judgment motion, the Middle District of Tennessee reasonably acknowledged that the involuntary transfer of a teacher "carried with it a professional stigma, unique to the particular circumstances of this action, sufficient to constitute a qualitative change in the conditions of employment, rendering the involuntary transfer objectively intolerable to a reasonable person." Hawkins v. Maury Cty. Bd. of Educ., No. 1:12-CV-00184, 2015 WL 4546783, at *12 (M.D. Tenn. July 27, 2015). The Hawkins Court's reasoning is sound and applies to this case as well, and I find that a reasonable juror could find on this record that Plaintiff's involuntary transfer was an adverse employment action sufficient to satisfy the second element of her prima facie case.

While I find that the involuntary transfer is itself sufficient to push this case past the summary judgment challenge, I will briefly discuss the remaining three alleged adverse actions that Plaintiff claims support her Objection. First, Plaintiff notes that she took sick leave at the end of her paid administrative leave. Her sick leave was from May 20, 2019 through June 14, 2019. She took this leave because of "work-related stress from being wrongfully accused of improperly interacting with a student, the DCYF Complaint, the School Department's investigation and false findings, and being concerned about returning to work in the same building as her former students." (ECF No. 26-1 at p. 6). A portion of her sick leave caused a small reduction in pay based on a formulaic chargeback under the School District's Collective Bargaining Agreement based on District-wide utilization of sick leave and substitute teacher expense. Defendant persuasively argues that the chargeback could not constitute a retaliatory adverse action because Plaintiff elected to take the sick leave, the chargeback amount was de

minimis, and was equally applicable across the board to all employees. I concur. Because the formulaic reduction in pay was de minimis and equally applicable to all employees, it cannot constitute an adverse action under these circumstances as a matter of law.

Next, Plaintiff notes that as a result of the DCYF Complaint, her teaching certificate was "flagged for legal review" by RIDE's online system, which was available for review by other school districts in Rhode Island. Id. Other than being flagged for a period, Plaintiff does not identify any resulting adverse consequence to her. The flagging of her teaching certificate was automatically undertaken by RIDE as a result of the DCYF Complaint and was not an action commenced or requested by the City of Warwick or any of its school administrators. I find that the temporary flagging of her teaching certificate under these circumstances cannot constitute an adverse action by her employer as a matter of law.

Finally, Plaintiff claims that because she complained to her supervisors about the special educator's absences, the following school year she was not provided a regular or special education substitute teacher on 90% of the days that the special educator was absent, leaving her alone in the classroom. She asserts that, as a result, she was forced to take on the additional job responsibilities of the special educator which included (1) modifying lesson plans for disabled students; (2) conducting group lessons for disabled students; and (3) researching, creating, and implementing individualized learning strategies and behavioral strategies for disabled students and working with the teacher's aide to assist with the disabled students. This presents a close call. As to timing, Plaintiff claims she first lodged her complaints during the 2017-2018 school year, but Defendant notes her formal written complaint was not filed until March 2019 which was after she was already performing the additional duties that she alleges were imposed in retaliation for her complaint. Defendant further argues that it was always Plaintiff's job responsibility to teach all the students in her co-taught classroom. Ultimately, while Plaintiff's argument in this regard is somewhat circular and the timing favors Defendant's position, I do not find that Defendant has met its Rule 56 burden as to this alleged adverse action. Defendant has not

moved for summary judgment on the issue of retaliatory motivation and has only challenged whether the alleged adverse actions are sufficient to support a retaliation claim as a matter of law. Further, I must view the facts in Plaintiff's favor in this summary judgment context, and, in doing so, I find that a reasonable juror could find an adverse employment action in this regard if Plaintiff presents competent and persuasive evidence at trial that she was adversely targeted in the substitute teacher assignment process.

Conclusion

For the foregoing reasons, I recommend that Defendant's Motion for Summary Judgment (ECF No. 22) be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 26, 2022